JOHNSON, BRADFORD AND BURKE *v.* STATE

[No. 116, September Term, 1964.]

284

*Decided January 7, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, SYBERT and OPPENHEIMER, JJ.

*Paul Wartzman* for appellants.

*Mathias J. DeVito, Assistant Attorney General,* with whom
were *Thomas B. Finan, Attorney General,* and *Charles E.
Moylan, Jr., State's Attorney for Baltimore City,* on the brief,
for appellee.

HORNEY, J., delivered the opinion of the Court.

Collins L. Johnson, Crawford S. Bradford and Carroll M.
Burke, having been convicted in the Criminal Court of Balti-
more under a series of indictments for armed robbery, have
appealed.

The appellants are three of six persons who were charged
with and tried for sundry robberies committed in certain liquor
dispensing establishments in Baltimore City during the first five
months of 1963. The convictions are but a part of more than
thirty indictments under which the indictees were tried. As
a result of the robbery of Montford Liquors, on January 23,
Burke was convicted under indictments numbered 2861 and
2862. As a result of the robbery of Dutch's Tavern, on April
29, Johnson and Burke were convicted under indictments num-
bered 2853, 2854, 2855, 2856, 2858 and 2859. As a result of the
robbery of Goerge's Tavern, on May 7, Bradford was convicted
under indictments numbered 2841, 2843 and 2844, but he does
not contest any of these convictions. As a result of the robbery
of Bower's Cafe, on May 16, Johnson, Bradford and Burke
were convicted under indictments numbered 2836, 2840 and
2860. And, as a result of the robbery of Darley Park Tavern,
on May 28, Burke was convicted under indictments numbered
2845 and 2864, but he does not contest either of these convic-
tions.

Since the facts and circumstances (particularly the extraju-

dicial identifications) concerning those convictions which are contested in this Court do not apply to all appellants in each case, we shall state the facts with respect to the robbery of Bower's Cafe, Dutch's Tavern and Montford Liquors separately.

### Bower's Cafe Robbery

The indictments for this robbery (numbered 2836, 2840 and 2860) involve all three appellants. Harry Morris was the owner-bartender and Violet Lewis was a customer. At the trial, both testified that four men were involved in the holdup. The police lineup was composed of eight men dressed somewhat similarly, five were in their twenties and three were in their forties, and all were approximately of the same height and weight. The bartender testified that he had identified one of the robbers at the lineup and the customer testified that she had identified two, but they were not asked to identify anyone in court or whether they were able to do so. Walter Hall, another eyewitness, testified that he could not identify any of the robbers. Sergeant Nagle (who had made a record of the identifications the eyewitnesses made) testified, however, that Lewis had picked out Burke and Bradford at the lineup and that Morris had picked out Johnson. The trial court overruled an objection that the testimony of the officer concerning the extra-judicial identifications was hearsay, but offered to permit the eyewitnesses to be recalled for cross-examination with respect to the identifications. This was not done.

Aside from the identifications, there were some inconsistencies in the testimony in that the bartender stated that Carroll Burke was the one who took his ring, while Leroy Burke (a brother of Carroll) testified that the taker of the ring was Nelson Bradford (apparently a relative of Crawford Bradford). The bartender also stated that all four robbers had guns, while Walter Hall stated only three were armed, as did Leroy Burke. The mother and sister of Johnson also testified that he was helping them move furniture at the time the robbery was committed.

Violet Lewis further testified, with respect to the charge in indictment numbered 2840, that one of the four armed robbers

took her wallet from her purse, looked inside, and, finding no money, put it on the bar where it was later found.

### Dutch's Tavern Robbery

The indictments for this robbery (numbered 2853, 2854, 2855, 2856, 2858 and 2859) involve only Johnson and Burke. Four of the eyewitnesses were unable to identify anyone. When, however, Joseph Ervin and Ferdinand Rutkowski, two other eyewitnesses or victims, were called and asked whether they had made any identifications at the police lineups, both replied that they had. But instead of asking them whom they had identified, the State again produced Sergeant Nagle for that purpose. After the police officer had testified as to the identifications made by Ervin and Rutkowski, both witnesses were recalled and positively identified Johnson and Burke in court as Sergeant Nagle said they had done at the lineup.

Again there were some inconsistencies in the testimony. Although Rutkowski identified both Johnson and Burke, he was apparently confused as to which one of them he had identified in each of two lineups. While both Ervin and Rutkowski identified Burke as the one who held up Rutkowski, Ervin testified that the robber was wearing a white sweater while Rutkowski stated that it was blue.

### Montford Liquors Robbery

The indictments for this robbery (numbered 2861 and 2862) involve only Burke. Ralph Cullen was unable to identify anyone, but Max Rubenstein, another eyewitness, affirmatively identified Burke as one of the robbers at the trial. While Rubenstein stated he had picked out the robber from twenty or twenty-five individual photographs, Sergeant Nagle indicated that the witness had identified Burke in a group photograph he had shown him rather than from the smaller photographs. The witness also stated that he had been to two or three police lineups, when, according to the sergeant, he had been to only one lineup and was there unable to identify Burke.

A few days before trial and again on the day of trial, Johnson moved for a continuance or postponement on the ground that his counsel had not had time to prepare for trial. There was a period of thirty days between arraignment and trial. Al-

though counsel had been given two weeks notice of the trial date, he had not petitioned for a continuance until four days before trial. When the trial court refused to grant a continuance, the State's Attorney offered to make his files (including all statements taken) available to trial counsel but apparently the offer was declined. The trial lasted for almost two weeks. The trial court refused to continue the trial, and stated it would grant a postponement should it be necessary when the time came to present the defense in order to afford Johnson further opportunity to secure such witnesses as were still missing, but it refused to delay presentation of the State's case.

On appeal questions are presented as to: (i) the propriety of denying appellant Johnson's motion for a continuance or postponement; (ii) the admission of the testimony of the police sergeant as to extrajudicial identifications of appellants made by victims or eyewitnesses of the robbery; and (iii) the sufficiency of the evidence to convict the several appellants of the robberies for which they were indicted. Additional questions (iv) are raised by appellant Burke in a "supplementary brief" he filed in proper person.

(i)

Appellant Johnson contends that it was an abuse of discretion for the trial court to deny his motion for a continuance or postponement and that in so doing he was denied effective assistance of counsel in violation of his constitutional rights. The claim is that due to the numerous indictments against him, the complexity of the issues, and the absence of witnesses material to his defense, he was unprepared for trial and that a postponement should have been granted.

The granting of a continuance, as the appellant recognizes, is within the sound discretion of the trial court. *Mazer v. State,* 231 Md. 40, 188 A. 2d 552 (1963) ; *McKenzie v. State,* 236 Md. 507, 204 A. 2d 678 (1964). In this case, where the indictee was represented by counsel he had employed from the time of arraignment some thirty days before trial and was notified of the date set for trial some two weeks before trial began, we cannot say that the trial court abused its discretion in refusing to grant the requested postponement. The States' Attorney,

in order to aid counsel for the appellant in the preparation of his case, offered to make the whole file on the case available. Furthermore, the trial judge, though denying a continuance, emphasized his willingness to grant a postponement if counsel found, when it was time to present the defense, that he needed additional time to procure witnesses. Under the facts of this case, it is evident that Johnson had ample time to prepare for trial and, in the absence of a showing of extraordinary circumstances necessitating a delay, a postponement was not required. *Harmon v. State,* 227 Md. 602, 177 A. 2d 902 (1962). See also *Bryant v. State,* 232 Md. 20, 191 A. 2d 566 (1963), and *Pressley v. State,* 220 Md. 558, 155 A. 2d 494 (1959).

(ii)

The admission of the testimony of the police sergeant as to the extrajudicial identifications of Johnson, Bradford and Burke made by two of the victims (Morris and Lewis) of the Bower's Cafe robbery was not reversible error. Nor was it error to admit the testimony of the officer as to the extrajudicial identifications of Johnson and Burke made by two of the eyewitnesses or victims (Ervin and Rutkowski) of the Dutch's Tavern robbery and thereafter allow them to identify Johnson and Burke from the witness stand.

The admissibility of this type of evidence as an exception to the hearsay rule was recognized by this Court in *Basoff v. State,* 208 Md. 643, 119 A. 2d 917 (1956). There it was held that testimony of an extrajudicial identification was admissible where the identification was such as to preclude any suspicion of unfairness or unreliability. Evidence of this nature was, at first, admitted as corroborative of a judicial identification, but it was later held to be admissible, under some circumstances, as substantive evidence. See *Judy v. State,* 218 Md. 168, 146 A. 2d 29 (1958). For a thorough discussion of the decisions of this Court with respect to the admissibility of extrajudicial identifications, see the opinion by Chief Judge Brune in *Proctor v. State,* 223 Md. 394, 164 A. 2d 708 (1960).

The appellants involved in the Bower's Cafe and Dutch's Tavern robberies do not dispute the admissibility of extrajudicial identifications under such circumstances as were present

in prior decisions. They challenge, however, the admission of an extrajudicial identification when the identification is established by another witness, such as the police sergeant in this case, without any corroboration by the identifying witness. Such evidence is deemed by these appellants to be unfair and unreliable in that it is not the best evidence. They assert that a courtroom identification by an eyewitness or a victim of a crime would be the best evidence, but concede that if such an identification cannot be made, then the testimony of a police officer as to whom the witness or victim had identified at the police lineup would be sufficient. An additional factor of unreliability is said to exist because the composition of the lineup of suspects in connection with the Bower's Cafe robbery was improper.

With respect to the Dutch's Tavern robbery, it is also contended that it was error to allow the police sergeant to testify (as to the extrajudicial identifications made by two of the eyewitnesses or victims) and then to allow the identifying witnesses to make a courtroom identification on redirect examination when they had not disclosed on direct examination whom they had identified at the lineup.

While the cases, which are collected in an annotation in 71 A.L.R. 2d 449, indicate that the primary objection to testimony of an extrajudicial identification is that it is hearsay, it is evident that the use of such identifications either as corroborative or substantive evidence is gaining recognition in the courts of other jurisdictions as well as this. In *Judy v. State, supra,* we recognized (at p. 174 of 218 Md.) that "evidence is hearsay only when it derives its value, not solely from the credit given to the witness himself, but in part from the veracity and competency of another person." However, where the out-of-court declarant is available as a witness, the dangers sought to be avoided by the hearsay rule are not present. See *Commonwealth v. Johnson,* 193 A. 2d 833 (Pa. 1963), where it is said that the testimony of a police officer as to an extrajudicial identification made at a voice lineup is admissible and not objectionable as hearsay when the identifying victims are witnesses at the trial and subject to cross-examination. Such a rule is in line with the A.L.I. Model Code of Evidence (Rule 503) and the Uniform Rules of Evidence (Rule 63[1]), which, in effect,

provide that testimony as to an extrajudicial identification is admissible if the identifying person is available as a witness so as to afford the accused the rights of confrontation and cross-examination. We hold therefore that where, as here, the identifying victims or eyewitnesses were present and subject to cross-examination, the testimony of the police officer as to the extrajudicial identifications was admissible.

Even where witnesses do not make a courtroom identification of the indictees, an extrajudicial identification is admissible as evidence over an objection that it is not the best evidence. *State v. Simmons,* 385 P. 2d 389 (Wash. 1963). We note that the *Simmons* case cited *Judy v. State, supra,* for the proposition that the first identification is usually the best identification. For other cases that have admitted evidence of extrajudicial identifications even where no positive courtroom identification was made, see *People v. Gould,* 354 P. 2d 865 (Cal. 1960) and *State v. Wilson,* 231 P. 2d 288 (Wash. 1951), *cert. den.* 342 U. S. 855 (1951) and 343 U. S. 950 (1952). See also *Bulluck v. State,* 219 Md. 67, 148 A. 2d 433 (1959), *cert. den.* 361 U. S. 847 (1959), where the victim testified that the accused resembled her attacker very closely but made no positive courtroom identification.

An examination of the record discloses that the lineup was so constituted as to preclude any question of the extrajudicial identification having been made under circumstances which were other than proper. The fairness, reliability and sufficiency of the out-of-court identifications, as well as the weight to be given such identifications, were primarily for the trial court to determine, and we find no error. See *Sippio v. State,* 227 Md. 449, 451, 177 A. 2d 261 (1962) ; *Presley v. State,* 224 Md. 550, 168 A. 2d 510 (1961), *cert. den.* 368 U. S. 957 (1962) ; and *Proctor v. State, supra.*

(iii)

We think the record shows that the trial court had before it sufficient evidence to fairly believe beyond a reasonable doubt that the appellants were guilty of the crimes charged in the indictments. Whatever minor inconsistencies existed in the testimony of the witnesses would only go to the credibility of the

witnesses and the weight to be given such testimony was in the first instance for the trier of facts to determine.

As to the indictments arising out of the Bower's Cafe robbery, the extrajudicial identifications of the robbers as well as the identification of the ring taken from one of the victims was sufficient evidence to convict Johnson, Bradford and Burke of these holdups. This is equally true with respect to the indictment numbered 2840, despite the claim that the robbery charged therein had not been proved. The mere fact that the wallet taken from another of the victims was subsequently discarded is of no consequence. The requisite intent to permanently deprive the owner of her property was evident from the circumstances surrounding the taking at gunpoint. The subsequent return of the wallet did not negate the commission of the crime. See *Midgett v. State,* 216 Md. 26, 41-42, 139 A. 2d 209 (1958).

With respect to the indictments returned as a result of the robbery of Dutch's Tavern, the extrajudicial as well as courtroom identifications of the robbers was more evidence than was required to sustain the convictions of Johnson and Burke of this robbery. Even without the testimony of the police sergeant, the positive courtroom identification by an eyewitness was sufficient to support the convictions. See *Bean v. State,* 234 Md. 432, 444, 199 A. 2d 773 (1964).

Finally, as to the indictments presented in connection with the holdup of Montford Liquors, the victim, in addition to pointing out the robber in a group photograph shown to him by the police, positively identified the accused at the trial. This was sufficient evidence to convict Burke of this robbery. See *Booker v. State,* 225 Md. 183, 170 A. 2d 203 (1961).

As was said in *Hursey v. State,* 233 Md. 243, 244, 196 A. 2d 472 (1964), the "weight of the evidence and the credibility of witnesses as well as the sufficiency of the identification of an accused are matters primarily for the trial court as the trier of facts to determine."

(iv)

Expressing dissatisfaction with his court appointed appellate counsel, the appellant Burke "in proper person" contends that he was denied the effective assistance of counsel in that

one attorney was appointed to represent all three appellants. He also claims an illegal arrest, denial of a separate trial, denial of a fair and impartial trial and an inadequate presentation of his appeal. As these are questions that might be raised in a post conviction proceeding, we shall dispose of them now while the whole record is before us. See *Royal v. State,* 236 Md. 443, 204 A. 2d 500 (1964).

The fact that the same attorney represented more than one defendant or appellant—in the absence of a showing that an actual or imminently potential conflict of interest (and none was here shown) prevented the attorney from impartially and adequately representing his clients—would not constitute error. *Pressley v. State, supra,* (at p. 562 of 220 Md.). Furthermore, the refusal to discharge court appointed counsel in accordance with the wishes of a defendant or appellant would not constitute error where, as here, there is nothing in the record to even suggest that the attorney had not competently represented his client. Cf. *Hines v. Warden,* 236 Md. 406, 204 A. 2d 176 (1964), and see *Hines v. State,* 223 Md. 251, 164 A. 2d 268 (1960). See also *Campbell v. State,* 231 Md. 21, 188 A. 2d 282 (1963).

Not only does the record fail to show that the other questions were ever raised below, but there is absolutely nothing in the record to show that his arrest was illegal, that he had been denied a separate trial or that he had not had a fair and impartial trial, and the mere allegations thereof, without more, presented no basis for appellate review. *Bauerlien v. Warden,* 236 Md. 346, 203 A. 2d 880 (1964). Certainly his appeal was adequately presented in this Court.

*Judgments affirmed.*