ALGERMON GRANDVILLE COUSINS *v.*
STATE OF MARYLAND

[No. 703, September Term, 1972.]

*Decided August 8, 1973.*

The cause was argued before THOMPSON, MOYLAN and DAVIDSON, JJ.

*Charles Miller,* with whom was *Charles J. Kittredge* on the brief, for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *E. Garrison Neal, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Algernon Grandville Cousins, appellant, was convicted of robbery by a jury in the Circuit Court for Prince George's County, Judge William B. Bowie presiding. A sentence of 8 years was imposed. On appeal Cousins contends that the judgment should be reversed because (1) a photographic identification was tainted; (2) the evidence as to his criminal agency was insufficient to support the conviction; and (3) the prosecutor improperly cross-examined the accused concerning a prior conviction.

At about 11:15 p.m. on January 24, 1970, a lone robber made off with approximately $140 from Arby's Roast Beef House at Coral Hills in Prince George's County. At the time of the robbery the only other persons in the restaurant were two employees, Mr. Steve Cornell Isom and Mr. Ernest

Tyrone Best. The employees described the robber to police as being approximately 6 feet to 6 feet 3 inches in height and weighing approximately 190 pounds. He was a light-skinned negro with a medium bush haircut. Soon after the robbery a suspect, not the appellant, was viewed by the two witnesses but both of them declared that he was not the robber. Later both employees were taken to the police station where they viewed a large number of photographs but identified no one. The photograph of appellant was not among those viewed by the employees at that time. Some two months later, on March 21, 1970, Detective Raymond E. Daniels visited the witnesses separately in their homes and displayed a group of 31 photographs to each. Both witnesses selected one of these photographs but with different degrees of certainty. At his home Mr. Isom stated that the robber was the person photographed in what became State's Exhibit No. 14; concededly that exhibit is a photograph of appellant. Mr. Best selected the same photograph as "looking like the robber" but was unable to make a positive identification. Appellant was not apprehended until almost two years later, January 10, 1972, at which time he was photographed and the photograph was introduced into evidence as State's Exhibit No. 33.

At the time of his arrest and at the time of the trial, appellant wore a large bush haircut, long sideburns, a mustache and a goatee. State's Exhibit No. 14 taken on September 25, 1968 shows at that time the appellant wore short hair and sideburns and had no mustache nor goatee.

At the trial, on July 11, 1972, Mr. Isom stated that appellant looked like the person whom he had identified from a picture on March 21, 1970 but due to the two and one-half year time lapse he could not positively identify appellant as the robber. He did indicate that appellant looked like the person in the photograph he had previously identified.

Mr. Best testified that although two months after the robbery he had selected the photo of the appellant as looking like the robber, he could not at the trial say that the appellant was that person. He explained "[w]ell, there are

some similarities, but it is not, you know, a very very good resemblance of the person", pointing out that "the person that took the money ... didn't have a beard, mustache, didn't have long sideburns." The evidence showed that the restaurant at the time of the robbery was well lighted and both employees had an opportunity to view the robber for several minutes.

The appellant testified denying participation in the robbery and stated that his appearance in the photograph taken at the time of his arrest was more like his appearance on the date of the robbery than the photograph which was taken in 1968.

## I Tainted Identification

Upon objection to the photographic identification, the court conducted a hearing out of the presence of the jury. At the conclusion of the hearing, the trial judge ruled that there was no evidence to show that the March 21, 1970 identifications were tainted but inasmuch as the State's Attorney had shown each of the two witnesses the single picture, State's Exhibit No. 14, on the morning of the trial, he would preclude the State from attempting to show the new photographic identification. On appeal, appellant contests this ruling only on the basis that there were certain unidentified markings on the back of the pictures. As all of the witnesses testified that the identifications were made without viewing the backs of the pictures, we are unable to see how those markings could have in anyway tainted the March 21, 1970 identifications. We agree completely with the finding of the trial judge that there was nothing to show these identifications were in anywise tainted. The appellant failed to carry his burden of showing that the photographic identifications were the product of improper suggestion. *Williams v. State*, 11 Md. App. 607, 275 A. 2d 522 and *Brown v. State*, 10 Md. App. 462, 271 A. 2d 182.

Citing *McGilton v. State*, 12 Md. App. 174, 278 A. 2d 76 and *Smith and Samuels v. State*, 6 Md. App. 59, 250 A. 2d 285, appellant argues that the exhibition of a single

photograph immediately prior to trial was so suggestive that the in-court identification should not have been admitted in the absence of a showing that the identification was based on an independent source. The easy answer to this objection is that the defendant made no objection to the in-court identifications, such as they were, therefore, there was no occasion for the State to attempt to show that the courtroom identifications were based upon an independent source; see *Boswell v. State*, 5 Md. App. 571, 249 A. 2d 490 and *Thompson v. State*, 6 Md. App. 50, 250 A. 2d 304. There is nothing before this Court to review. Md. Rule 1085.

## II Sufficiency of the Identification Evidence

Appellant argues that under *Gibbs v. State*, 7 Md. App. 35, 253 A. 2d 446, we should hold that the identifications were insufficient to support the conviction. In *Gibbs*, the only identification witness stated positively he was mistaken as to his extra-judicial identifications and that he not only could not identify appellant at the trial as the man who robbed him but stated positively that he was not the person who robbed him. We do not think that case is controlling under the facts here. Only Best gave any indication that the man on trial was not the robber and, in addition, he was very equivocal and pointed specifically to the longer hair, sideburns, mustache and goatee as reasons he could not say that the accused looked liked the robber. The other witness, Mr. Isom, not only made a positive out of court identification but stated in court that in his opinion the appellant looked like the robber. There is quite a distinction between a witness who says that he was mistaken in a prior identification and that the person on trial was not the criminal and a witness who states that he was positive of the prior photographic identification but cannot positively say that the person presently on trial is the robber especially where there has been evidence to indicate that the accused's appearance has substantially changed since the identified photograph was taken.

Getting closer to the point, appellant cites *People v.*

*Gould,* 354 P. 2d 865, 870, wherein the court stated its holding very broadly:

> "An extra-judicial identification that cannot be confirmed by an identification at the trial is insufficient [1] to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime. See *Reamer v. United States,* 6 Cir., 229 F.2d 884, 886. Moreover, the probative value of an identification depends on the circumstances under which it was made. Mrs. Fenwick merely selected one of a small group of photographs. The small size of the group increased the danger of suggestion. (See 3 Wigmore, Evidence (3d ed. 1940) § 786a, p. 164.) Identification from a still photograph is substantially less reliable than identification of an individual seen in person. (See id., pp. 165-166.) It becomes particularly suspect when, as in the present case, the witness subsequently fails to identify the subject of the photograph when seen in person and there is no other evidence tending to identify him."

Under the circumstances of the present case we decline to follow the California rule as stated. We note that the authority relied on by the court, *Reamer v. United States, supra,* was a case where a masked bandit was identified only by his voice, not by his appearance. We further note that in *Gould* the accused's picture was selected from a small number of photographs where in the instant case the appellant's picture was selected from a large number of photographs. We note further that in *Gould* there was no evidence to suggest that the accused's appearance had changed between the time of the crime and the time of the trial. Indeed it would be a dangerous rule to permit an accused to escape conviction only because his appearance has been substantially altered so that witnesses who

---

1. As reported the case used the word "sufficient" instead of "insufficient". The complete text and other reports of the case show that the error was a misprint. See 54 Cal. 2d 621, 631, 7 Cal. Rptr. 273, 278.

identified photographs before trial are unable to state with absolute certainty that the accused as he appeared at trial was the criminal. Although the accused denied such alteration in his appearance there was no obligation on the trier of the facts to accept this denial.

We faced a somewhat similar situation in *Holmes v. State*, 10 Md. App. 253, 269 A. 2d 175, wherein there was a substantial change of appearance and although a witness had identified the accused at a preliminary hearing he was unable to do so in court. He did however identify as the robber, the photograph of the accused taken at the time of his arrest. We held that the out of court identification under those circumstances was sufficient to support the conviction.

Maryland has long held that evidence of an extra-judicial identification is admissible as substantive and not corroborative evidence when made under circumstances precluding suspicion of unfairness or unreliability and where the out of court declarant is present at the trial and subject to cross-examination. The cases were reviewed in *Johnson v. State*, 237 Md. 283, 206 A. 2d 138, and *Holmes v. State, supra.* It is, of course, well established the test for reviewing the sufficiency of the evidence in Maryland appellate courts is whether or not there is any evidence from which there can be a rational inference of guilt. *Williams v. State*, 5 Md. App. 450, 247 A. 2d 731. Under the circumstances of this case we hold that the question was a matter of weight to be determined by the jury.

Appellant makes the additional argument that because the trial judge stated, out of the presence of the jury, that if the case were being tried before him the State would be in trouble and that if he were sitting as a member of the jury he would vote to acquit, as evidence that the trial judge thought the evidence was insufficient to sustain the verdict and that he should have granted the defense's motion for judgment of acquittal.

When the trial judge is the trier of the facts, he, like a jury, must weigh the evidence and make a determination in accordance with the evidence. If, on the other hand, he is considering the motion to acquit during a jury trial, he sits

in identically the same position as this Court and must make a determination whether there is any evidence from which the jury could rationally infer guilt. *Vuitch v. State,* 10 Md. App. 389, 271 A. 2d 371. In the instant case there was evidence from which a rational mind could infer guilt.

### III Motion for Mistrial

During cross-examination of appellant, the State asked, "Are you the same Algermon Cousins that was convicted in 1971 of indecent exposure in the District of Columbia?" Upon objection, the court sustained the objection apparently on the basis that he did not think such a conviction bore upon credibility. Whereupon the defense moved for a mistrial which was denied by the court; however, the jury was directed to ignore the question and not to speculate as to the answer saying, "It has absolutely nothing to do with this case in any way, shape, or form." Assuming without deciding that the question was improper, we think the trial court's prompt admonition to the jury was sufficient to remove any prejudice. *Graham v. State,* 13 Md. App. 171, 282 A. 2d 162, *Gerstein v. State,* 10 Md. App. 322, 270 A. 2d 331, *Brunson v. State,* 9 Md. App. 1, 261 A. 2d 794 and *Hurley v. State,* 6 Md. App. 348, 251 A. 2d 241.

*Judgment affirmed.*